Good morning and may it please the Court. I'm George Ehrend on behalf of Joanne Ogden along with Trial Counsel William Gilbert. We're asking the Court to reverse the dismissal of all Ms. Ogden's claims on summary judgment by the District Court and to remand this case for trial. I'd like to reserve five minutes of my 15 minutes for rebuttal, if I may. This is a complex factual record and there's not enough time to rehearse all of the facts or to address every single ruling that the trial court made. And so I want to start by saying the big picture is, from our perspective, that the PUD has larded the record with a whole bunch of irrelevancies. The things that they did right in the course of Ms. Ogden's employment are not a defense to the things that they did wrong and the things for which they have not been sued. And then you look at the District Court's decision and you can see where maybe some of those facts influenced her outcome in this case. What's the adverse action? The primary adverse action is the demotion. Transfer to another job, correct? Yes, January 2000. But your client viewed it as a demotion? Yes. And which she'd applied for earlier, right? She had talked to her supervisor about applying for it. She was told she was not qualified and did not follow through with any kind of application on that. But she had indicated an interest in that job previously, correct? Regardless of whether she had formally applied for it. Yes. In the course of her treatment, she thought maybe, and given the problems she was having, she thought maybe this was a better alternative. And she was told by her supervisor, no, that's not a better alternative, don't do that. The position was eliminated before she was moved into that position and then it was reopened at some point. The record's not entirely clear on when it was reopened. Is there any other adverse employment action that you're claiming? If we're talking about adverse employment action for purposes of triggering disparate treatment liability under the ADA and the Washington law against discrimination, there are, it's that and the delay of the career advancement path. And that was in June of 2009. But I want to focus on that demotion. Because it wasn't just something that... Was she paid less? No. Did she get fewer benefits? Yes. What were the difference in benefits? No cell phone. That's it? I'm sorry, you said no cell phone? That makes it a demotion? No. That doesn't make it a demotion. It makes it a demotion, first of all, everybody in the workplace, we have two co-employee affidavits, says everybody in the workplace perceived this as a demotion. She was deprived of supervisory authority over any other personnel. That's what she had before as administrative support services supervisor. She had obviously different duties and job description. It required, it had different qualifications and skill set. It was in a lower place in the company organizational chart. It was perceived, like I said, as a demotion by co-employees. And it had decreased promotion advancement and earning opportunities in that position. In your view, was she still capable of performing her previous job? Yes. Capable of performing the job with this caveat. She was entitled contractually at certain times to short-term disability benefits. She was entitled legally to accommodations under the Americans with Disabilities Act and the Washington Logins Discrimination, as well as being entitled legally to the leave and non-retaliation, non-interference requirements the family medical event. With those legal and contractual requirements satisfied, yes. The problem was her doctors told her she had to quit because those requirements weren't satisfied. Does her previous job still exist? As I understood it, it does not. Yes, I believe it does. It was assigned, I'm not sure today. Guess which. I thought that it had been eliminated. Her previous supervisory job. Her previous supervisory job was assigned to another person and then they said that, well, maybe there were a little other duties thrown in there. I thought it was eliminated. I thought the record showed that that job was eliminated. She contends that it was not eliminated, that her job duties were reassigned to another person who just basically stepped into her position. They contend that that person also got some additional duties which made the job wholly different. Is there a different title to the job regardless? I don't remember off the top of my head. And I had a question. I'm not sure this was raised. I'm trying to remember when this case was filed. 2012, is that right? Approximately? Sounds about right. So in this transfer or demotion, depending on one's viewpoint, occurred in 2000, is that right? Or 2011? 2011. January 2011. Okay. And she continued trying to work and then up to the point. You know, there's other things going on besides the tangible job detriments or the tangible job losses, what we consider the demotion for the reasons I've stated. You know, there's other reasons too that are reflected in the record. It was in an isolated location. She was locked out of the building she was previously supposed to be in and they called this building the trailer trash because she was working there in this isolated location by herself. And there's another reason to consider this a demotion too, and that's the reasons why they did it. Now, they say that this was a reorganization. And we know that from Rees v. Sanderson and a whole line of cases that pretextual reasons for committing an action, an employer taking an action, are affirmative evidence of discriminatory animus. What actual damages aside from a cell phone are attributable to the transfer to a different job? Decreased opportunities for advancement in salary increases. Can I tell you how much she would have gotten? At this point, you know, at this stage of the proceedings, I don't have an expert report laying that out. But that was one of the more tangible aspects of the change. We have direct evidence at the time that this transfer demotion non-reinstatement was made, and that is that her supervisor said, you're getting this because you were tagging in, tagging out. That was true. That statement was true. She was coming and going of necessity because of her physical condition. And I mean, I'm not really sure what to make of it. It's like saying you were gone a lot and now you're back. And that was true, wasn't it? You took leave to which you are contractually entitled to with your employment. And it's described. You took leave that you were legally entitled to. And now I'm going to use that leave as a basis for reassigning you. That is archetypal discrimination on the basis of disability. If you take the absences that constitute a reasonable accommodation or protected leave under the Family Medical Leave Act. And it's your view that you can't mention that you've been gone at all, even if it's true? No, but you can't. Obviously, obviously, everybody knows that she's been gone, but you can't say you're being put in this position, which has the differences that I've outlined, because you're tagging in and tagging out. Especially when they now come back and say, oh, this was a reorganization. We had low snowpack. We had budgetary problems. Well, they didn't reduce any headcount. They didn't make any meaningful change to the job duties. And that isn't what they said at the time. But they feel the need to justify the demotion on terms other than tagging in and tagging out. And that's because they recognize that that's a culpable, an inculpating statement. And we know it's an inculpating statement from prior history, too, because B. Alec is another employee of the Public Utility District who, the decision maker in this case, Ms. Woodward, asked my client, Ms. Ogden, to change her job duties to make it harder for her to do her job because she had been, quote, tagging in and tagging out. And that was cause for alarm as to what was happening to Ms. Ogden in this case. And it gets to the heart. You know, the way, the tone of the questions that you're asking mirrors the tone that the district court judge took in this case, which isn't, you know, we've got a bare, naked documentary record here, and you don't get the inflection, the meaning, the context from that that a jury is supposed to resolve. And the best way I can think of to do this, you know, when there are competing inferences that can be drawn from the same facts, right? You've got an email that says something. You've got a comment from a supervisor that says, I'm doing this because you were tagging in and tagging out. How do you know whether that's discriminatory animus or entirely innocuous? You don't. That's the jury's job. And the best example I can think of, there's probably lots of examples that we could use, is just to take the sentence, woman without her man is nothing, right? I pause after woman and the sentence means one thing. If I pause differently and I say, woman without her man, which my wife would be appalled that I would say that, is nothing, right? The meaning is exactly the opposite. And that's the point here. We've got a record that a jury needs to sort out, not the judge, the district court judge. You're hanging your hat essentially on pretext because the reason given for the transfer was that the previous job was eliminated and that they went from three employees to two employees in a reorganization. So if that's true, that is a legitimate non-discriminatory reason. So it seems to me that you're at the last step of McDonnell Douglas. Am I right about that? No. We're hanging our hat on direct evidence of discrimination, tagging in and tagging out, and then the comment about FaceTime when it comes to delaying career advancement. So you think that would not be a legitimate non-discriminatory reason if in fact the reason was a reorganization? It's a post hoc rationalization for what they did. That's where I'm asking you the question. But we've got direct evidence. We don't get to pretext if you've got direct evidence of discrimination and you've got a substantial factor test of causation in a discrimination case under at least the Washington law against discrimination. And even under the ADA, you've got this idea that, oh, we would have done it anyway. That's their affirmative defense that they've kind of come back. They've got to plead it and prove it. The direct evidence of discrimination again is? With respect to the demotion, the tagging in, tagging out comment. It's just like saying I'm doing it because you're black. She said I'm doing it because you took leave. Same with the delay of the career advancement. I'm doing it because you lack FaceTime here, not because she hadn't completed the requirements necessary for advancement on the career path. And then we get to FMLA. And all I want to say about this is this isn't a matter of pretext. She's got a statutory right to be reinstated to the position. I realize I'm heading into my rebuttal, but I want to say this so that the other side can have a fair chance to respond. She's got a statutory right to be reinstated to the same or an equivalent position. If you look at the regulation definition. If the position exists. If the position exists. It wouldn't have otherwise been. And it's their burden to prove that it wouldn't have otherwise been, which is different than the way that the Superior Court decided this case. They decided it solely under a pretext analysis, ignored the other direct and circumstantial evidence of discrimination, which is outlined at some length in the record, and put its thumb on the scales when it came to disregarding the calculations of hours worked by Ms. and the entitlement to leave that Ms. Ogden provided. So with that, I'll reserve a second. I'll take a second on that. It is somewhat of a mishmash, I have to say, in terms of the record on that contention. But did she ever confront her employer before litigation ensued, before she got involved with lawyers? Did she ever confront them with her version of the number of hours? There was no need to because they admitted at all times before litigation, they admitted  to the fact that she worked these extra hours and all the things that apparently she's put in her own declaration. Confront? No. Common knowledge, yes. Co-employees Donna Kennedy and Catherine Clark attest to the number of hours. Well, but I mean, where the employer has a chance to be confronted to say, our record keeping is wrong, and here's why. There was no cause because they didn't say she didn't have enough hours. Instead, they designated this as FMLA qualifying leave. So there was no dispute about hours until we get to lawsuit. So she got a benefit that she asked for, the leave benefit. She got the leave. She did not get reinstated. Thank you. Thank you. You have some rebuttal time remaining. We'll hear from Mr. Winterbauer. Good morning, Your Honors. May it please the Court, my name is Steve Winterbauer and I represent the defendant, the district. I'll refer to that entity as throughout this morning's discussion. Let me jump right to this issue of the job elimination. There was a job elimination. The record is absolutely clear on that fact. There is no evidence in the record that indicates, that even suggests, that the administrative support supervisor position continued beyond the date that Ms. Ogden was advised it was being eliminated. That's beyond dispute. Second, the idea that the employer cannot act on the fact that there is a history of these, of an inability to maintain any sort of attendance, any sort of reliable attendance in a supervisory position is contrary to law, including Ninth Circuit law. Basically plaintiff is hanging her hat on a stretched interpretation of the Gambini decision. It's cited in plaintiff's brief. There is a phrase in Gambini that says straight up exactly what counsel just mentioned to this panel. And that's the concept that as a rule, if you fire someone or demote them, assuming this was a demotion for present purposes, if you fire someone or take adverse action against them for conduct that is disability related, then you are by definition taking that action based on the disability and that's unlawful. We don't dispute that. But that is a principle that cannot be applied in a vacuum. We have cited to the court multitudes of other decisions that add the additional part of that analysis. If Ms. Woodward had immediately, the first time Ms. Ogden had come forward and said to Ms. Woodward, Ms. Woodward was the supervisor, if Ms. Ogden had come forward and said I need time off, and Ms. Woodward had said why? Well, it's because I've got this condition. And Ms. Woodward said I'm not going to provide you that because I don't want you tagging in and tagging out because of that type of a disability. There's a claim. That isn't this case. That tagging in, tagging out, all that. Let me just make sure I understand one thing about this. I understand that the two adverse employment actions that are claimed are the transfer or demotion to a different job and the delay, there was a three month or some period of time delay in the career path, potential for advancement. I don't take that there were any claims that leave was actually denied when medical leave was denied. It's undisputed that every request for leave she ever made was granted. That's what I wanted to be sure, and opposing counsel didn't mention that as an adverse action, but of course on rebuttal he can make any points on that. But I wanted your view on that. My point is that there is nothing, no legal significance, no adverse inference to be drawn from a tagging in, tagging out comment given the point in time at which it was made. And it's undisputed as to when that point in time was. We are talking about a comment being made in or about January of 2011. By that point in time, Ms. Ogden had already had the benefit of multiple periods of leave to the tune of some 20 to 30 weeks of time off, both FMLA and non-FMLA. Ms. Ogden was making the point that, hey, that's a problem. We've tried to accommodate for the better part since October of 2008 that accommodation effort happened, the comments not made until January of 2011. We've spent the better part of two and a half years trying to support you and see if we can turn the corner on these issues such that you can actually be here to perform this job. What is your position with regard to the delay of the career path opportunity for advancement and whether more was required by the accommodation requirements of federal and state law? First of all, I think the argument is erroneous. The delay, there's nothing in the disability discrimination law or the FMLA for that matter that indicates that the fact that someone takes time off, be it as an accommodation or for FMLA purposes, cannot factor into the delay. That's exactly what I'm asking. I may not have asked it in a very artful form, but accommodation can take many forms. One form of accommodation would be to say, even though you've been absent, we won't, because it's been because of a disability and otherwise you've been a good employee, we won't delay your career path as we would have if you had just taken a long vacation. So I guess my question is whether that is a required or potentially whether there's a factual issue as to whether that would have been a required accommodation. No, my point, Your Honor, is actually that it is not and that the law is actually clear on that point. Let me default to the FMLA, for example, because FMLA says right in the regulation it draws a distinction, which I think applies with equal force to disability law in general. And that distinction is that if you were going to allow someone, if you're going to provide someone a pay raise, let's make it sort of black and white, if you apply a pay raise across the board, so this person's been out on leave for an extended period of time. While they're on leave, you decide, you know what, we're going to go 4 percent pay raise across the board. You can't not provide that pay raise to the person who's out on disability leave. That would be unlawful differential treatment. That would be a failure to accommodate. Conversely, and the case law is clear on this, if you have a pay raise that is tied to actual performance-related benchmarks, and because that person has been out on leave, be it FMLA or non-FMLA, they have not had the chance yet, through no fault of their own, but they have not yet done those steps, those performance-based steps, in order to qualify for that particular payment, then they're not entitled to that payment. Could an employer nevertheless give them that benefit? Absolutely. Is there a legal requirement to do it under the FMLA or disability law? The answer is no. And here, if you look at this record, you will see the district being very mindful to precisely that distinction. The example that I just gave, about a 4 percent across the board pay raise, is not theoretical. That's exactly what happened in this context. While Ms. Ogden was on one of her leaves, there was that type of an increase. In fact, it happened twice. There was also a 2 percent lump sum increase. She got the benefit of both of those payments because they weren't tied to any sort of benchmark. She was treated like everybody else. The only time that her career path was delayed at all was where it was, and it's undisputed, where it was based on the performance or the attainment of certain benchmarks. Which, by the way, if the form of accommodation there was actually to extend the deadline and give her more opportunity to meet those benchmarks, if they had said to her right then, well, look, we're at June 29, the step one in the learning curve, and you haven't finished these things, so you know what? Done. You failed that particular aspect of the learning curve, then there would be a claim. But that's not what happened. They did what they're allowed to do. They did what they're required to do, which is adjust to give her additional time. You also see that in two of three instances, they then turned around and made the uptick in her compensation retroactive. So they gave her the benefit of the compensation despite the fact that they had delayed the deadline for accomplishing the underlying performance benchmark. I want to briefly touch two other issues. One is this idea of direct evidence, because that is prominently displayed in the records, and that was also a linchpin of the comments made by opposing counsel a moment ago. And then I want to briefly address the FMLA interference claim. On the direct evidence, this again goes back to the tagging in, tagging out concept. We have cited to the court a slew of cases, predominantly Federal law, not exclusively, but predominantly Federal law, including from the Ninth Circuit, that have addressed the types of remarks that are being proffered here today and have had to make a judgment as to are those sufficiently reflective of some sort of discriminatory animus to first of all be admissible and to second of all to defeat an otherwise properly supported motion for summary judgment. The cases that we have cited to the court are the cases that have held, no, that benchmark has not been met. I'm not going to walk through each one of those. Suffice it to say, though, that many of those decisions, including before this court, involve statements that were far more directly or intuitively suggestive of some sort of unlawful animus than the type of remarks that we have here today. Here today we're talking about a tagging in, tagging out remark, which again in context was factually true, made sense to be stated, and was stated in part to explain an action that was being taken. Well, true isn't quite enough. If the, as I take it, it's both true and it explains why she could not perform the duties of her supervisory position. Absolutely, Your Honor. Because if it was true but irrelevant, it would support a claim. Absolutely. For example, if they said, well, you know, now that you've had surgery on your left arm, you look crummy and we're not putting you back in that job, it's true perhaps, but would be supportive. So it seems like the key question is whether those absences that were correctly identified rendered her unable to perform those duties. I agree 100%, Your Honor. I didn't mean to, that came off a bit flip, my comment there. My point here, though, is that the validity, the weight to be given to these types of remarks is analyzed from several different dimensions. Those are laid out in the briefing, two of them you have just flagged. My point here is that on all of those dimensions, these particular alleged remarks fall far, far short, not only of being direct evidence of any sort of unlawful animus, but even being circumstantial evidence under these circumstances. I might add that the comment by Ms. Woodward regarding tagging in, tagging out, also proved to be not only accurate looking backward, but it proved to be accurate looking forward. This isn't a case where someone said, you know what, you've taken all this leave, we're going to move you into this other position because we're eliminating your position, and then lo and behold, they maintain perfect attendance from that point forward, and have they just been given that one opportunity, there wouldn't have been an issue. This is a situation where this individual, from the date of the alleged remark about tagging in, tagging out going forward, proceeded to take three or four more periods of leave to the tune of 40 or 50 weeks off. That's a long period of additional time that that person was off. The decision was sound, no matter what perspective you adopt in trying to analyze it. Second and last point on this issue of the decision to move. There's been no inconsistency in the representations to Ms. Ogden as to the whys and wherefores behind that decision. We put before the Court a slew of documents. This isn't testimony. This isn't after the fact backfilled by some wise witness. These are contemporaneous memos that went to residents of Grant County, that went to employees of Grant County, that were published at the time in 2009, 2010, and into 2011, that talked about the severe financial strain on the district and identified those reasons. We've put into the record related email that shows then discussion among management, including Ms. Woodward, at the direction of the district's senior leadership, saying, you need to find areas where you can cut costs. And cutting costs can include, can include, exactly what this organization did. When they explained to her that one of the reasons we're going to make this move is because of the tagging in Tag Out, that's not inconsistent. That's part of the overall explanation of events. They're being crucified now for being candid and honest with her then. The FMLA claim, Your Honor. I won't address the retaliation claim. I think that's addressed sufficiently in the briefs. On the interference claim, a couple of major points. First, that analysis doesn't even take off unless you can, you can put evidence in the record that really establishes that the job was not, in fact, eliminated and for the reasons that we say it was eliminated. If that job was eliminated, there's no restoration right. The FMLA doesn't require an employer to keep positions in place forever, even when it's against their otherwise compelling business interests. It simply says, you can't remove a position, you can't take action against an individual because they're exercising these rights. That's the balance this law is trying to strike. So our position is the unassailable nature of that decision precludes further analysis under the FMLA interference claim. However, even if you go down that road, the fact of the matter is that the FMLA makes clear that it looks to FLSA guidance in determining the calculation of hours worked and the legitimacy of the underlying records, the adequacy of the records. Here, the records, and we've put them all in there, are very, very detailed as to Ms. Ogden's work. Many of them are signed by her. They show variable start times, they show variable end times. These aren't notes on a napkin or some journal. These are pre-printed records and they show that the district was going overboard trying to properly calculate time in and time out because there were a myriad set of benefits they were trying to access. Thank you, counsel. You've exceeded your time. We understand your position. Mr. Arnn, you have some rebuttal time remaining. On to the delay of the career path. There's nothing specific that they've identified that she didn't complete. And Joanne Ogden's declaration in the record says there was nothing left to complete other than face time. And that was what was held against her. That's point number one. Point number two, on what I'll call the stray remark cases. Obviously, a stray remark in the workplace doesn't automatically give rise to a discrimination claim. But the cases even cited by the district show that when the remark that can be interpreted as discriminatory animus is made in relation to the decision in question, like delay of the career path, like the demotion, then it is actionable evidence or it is evidence of a direct evidence of actionable discrimination. Is it your position that absences cannot be taken into account in determining whether someone remains qualified to be a supervisor? Yeah. If it's an essential element, that's a great question. If it's an essential element of the job that is not being met by virtue of those absences, then it can be taken into account. That's not what they've ever said until they get into the summary judgment hearing below and here. They have not said that she was not performing her job adequately, and that was the reason for the transfer or demotion. They've never said that But isn't that what the tagging in and tagging out precisely was an explanation of that? Only if you interpret that, you infer from that, take an inference adverse to Ms. Ogden. Only if you draw the wrong adverse on summary judgment review. It's a way of saying you were gone a lot, and your position is that if you're gone a lot because of your disability, it doesn't count, or at least it sounds like that's your argument. What she's able to say is, you're not able to do your job. Maybe that's because of your disability, maybe it's because of the absences related to the disability. The key thing there is the ability to do the job, and they've never said she wasn't able to do the job and that's why she was demoted, or that's why her career path was transferred. What they've said, they didn't even say that it was the absences. They just said it was a reorganization, and we've got evidence in the record from three people who say, okay, yeah, maybe there was low snowpack, maybe there was budgetary difficulties. There's some conflicting evidence in the record. It's not uniform on that point, but the bigger point was the reorganization has nothing to do with that, because they didn't really, they didn't decrease the head count, they didn't save any money. I thought it went from three people to two. You dispute that? Yes. ER 212 to 215 is the declaration of Donna Kennedy, says it actually increased the costs in the department. I didn't ask you about costs. I asked you about head count. I believe she says that they did not decrease the head count. They just eliminated vacant positions. They didn't eliminate a position where anybody was in it, vacant or unfilled positions. Thank you, counsel. You may have a sentence or so to wrap up. You've exceeded your time. I'll just ask the court to reverse and remand this case. Thank you. Thank you, counsel. The case just argued is submitted, and I, at least for myself, want to thank both lawyers for very excellent and helpful presentations.
judges: Hawkins, Graber, Teilborg